1  KAREN P. HEWITT
   United States Attorney
2  NICOLE ACTON JONES
   Assistant U.S. Attorney
3  California State Bar No. 231929
   Federal Office Building
4  880 Front Street, Room 6293
   San Diego, California 92101-8893
5  Telephone: (619) 557-5482
   nicole.jones@usdoj.gov
6
   Attorneys for Plaintiff
7  United States of America

8                    UNITED STATES DISTRICT COURT
9
                    SOUTHERN DISTRICT OF CALIFORNIA
10
   UNITED STATES OF AMERICA,      )    Case No. 07CR2609-JM
11                                 )
                    Plaintiff,     )    DATE: May 30, 2008
12                                 )    TIME: 11:00 a.m.
            v.                     )
13                                 )    GOVERNMENT'S NOTICE OF MOTION
   LEONARDO SAN JUAN, JR.,         )    AND MOTIONS IN LIMINE TO:
14                                 )
                    Defendant.     )    (1) ADMIT STATEMENTS BY RAMIREZ;
15                                 )    (2) ADMIT STATEMENTS BY
                                   )        DEFENDANT;
16                                 )    (3) ALLOW VIDEO OF THE AK-47;
                                   )    (4) PRECLUDE INFLAMMATORY
17                                 )        TESTIMONY;
                                   )    (5) PREAPPROVE VOIR DIRE
18  _____)        QUESTIONS

19
            PLEASE TAKE NOTICE that on May 30, 2008, at 11:00 a.m.,
20
   or as soon thereafter as counsel may be heard, the Plaintiff,
21
   the UNITED STATES OF AMERICA, by and through its counsel,
22
   KAREN P. HEWITT, United States Attorney, and NICOLE ACTON
23
   JONES and TARA MCGRATH, Assistant United States Attorneys,
24
   will ask this Court to issue an order granting the following
25
   Motions in Limine.  These Motions are based upon the files and
26
   records of the case together with the attached Statement of
27
   Facts and Memorandum of Points and Authorities.
28

1

## I

## STATEMENT OF THE CASE

On November 29, 2007, a grand jury returned a one-count Indictment against Defendant Leonardo San Juan, Jr., charging him with possession of an unregistered firearm, in violation of 26 U.S.C. § 5861(d). On December 5, 2007, Defendant was arraigned on the Indictment and entered a plea of not guilty. On February 15, 2008, Defendant was arraigned on a one-count superseding Indictment and entered a plea of not guilty.

On May 16, 2008, this matter was scheduled for jury trial on June 2, 2008.

## II

## STATEMENT OF FACTS

On June 25, 2006, Captain Glenn Davis, United States Marine Corps Reserve, was working at the Iron Sights gun range when a then unidentified female came to the range to learn how to shoot her boyfriend's .45 caliber semi-automatic handgun for protection. Captain Davis attempted to teach her how to use the gun, but the female had difficulty with the weapon's slide and safety. Captain Davis asked the female if she had anything else, meaning another gun. The female responded that she had an M-4[1] and explained that she and her boyfriend had traveled out of state to get the gun and that after it was delivered, he wrapped it up and stuffed in the trunk. The female further explained that her boyfriend told her that if they were caught with the gun they would be in trouble. Captain Davis advised

---

[1]    An M-4 is an assault rifle that can be semi-automatic or automatic, depending upon the model.

the female that she could not have that type of gun and should not tell people about it.  Captain Davis then asked if she had anything else that would be easier to use, to which the female responded that she had fifty (50) AK's in her garage.  The female stated that her boyfriend, who she had previously stated was a Marine, had brought the guns back every time he returned from Iraq.  The female elaborated that he would sneak them back in medical kit bags.  Captain Davis told her that she needed to get rid of the guns because she could go to jail.  After the female left, Captain Davis contacted law enforcement.

Agents with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and the Naval Criminal Investigative Service (NCIS) conducted an investigation and, by tracing 911 calls, identified the female as Christina Ramirez.  On June 28, 2006, ATF Agent Schmidt talked to Ramirez at her residence.  Ramirez stated she leased the residence with her fiancé, Leonardo San Juan, Jr. (the Defendant).  A consent search of the apartment and its associated garage revealed an AK-47 machinegun in a plastic container in the back of the garage, hidden beneath military clothing and gear bearing Defendant San Juan's name.[2]

On or about June 29, 2006, Agent Schmidt received a voicemail message from Defendant San Juan stating that he knew guns were taken from his house and inquiring as to what was going on.  Agent Schmidt relayed the message to NCIS Agent Tedla.  On June 29, 2006, Agent Tedla spoke over the telephone

---

[2]    Agents also found a M-4 Bushmaster semi-automatic rifle underneath Defendant's bed.  This firearm, which is classified under California law as an assault weapon, is the subject of a pending case in San Diego Superior Court.

with Defendant San Juan, who stated that he knew his weapons were taken the previous day from his house and he wanted to know what was going on.

Testing of the weapon found in Defendant's garage by ATF Firearms Enforcement Officer Michael Knapp revealed that the firearm was a functional, fully-automatic AK-47. In addition, Knapp determined that the machinegun had been manufactured at a factory in Bulgaria and additional markings on the weapon indicated it had been issued to the Iraqi National Forces.

A search of the National Firearms Registration and Transfer Record revealed no registration records or authorizations allowing Defendant to possess a fully automatic weapon.

On February 5, 2007, Agents Schmidt and Tedla went to San Juan and Ramirez's apartment to serve a grand jury subpoena on Ramirez. San Juan was home and he became confrontational with the agents. Ramirez arrived while the agents were there and San Juan instructed her "don't tell them anything, you don't have to talk to them." Prior to testifying before the grand jury, Ramirez formally asserted her 5th Amendment right against self-incrimination and her privilege against adverse spousal testimony.

**III**

**GOVERNMENT'S MOTIONS IN LIMINE**

**A.    The Court Should Admit Statement by Ramirez**

As discussed above, the investigation that led to the present charge against Defendant San Juan was initiated by statements his then girlfriend (now wife) made to a private gun shop employee. The Government seeks to admit Ramirez's

statements to Captain Davis as statements against penal interest. Fed. R. Evid. 804(b)(3).

### 1. **Ramirez's Statements Were Not Testimonial**

As an initial matter, the <u>Crawford</u> Confrontation Clause analysis does not apply to this situation because Ramirez's statements were not testimonial. <u>Crawford v. Washington</u>, 541 U.S. 36, 68 (2004) (out of court statements that are testimonial are barred unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination). As the Supreme Court explained in a subsequent case: "It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." <u>Davis v. Washington</u>, 547 U.S. 813, 821 (2006)("statements made to 911 operator describing a present emergency not testimonial.")

Although the Supreme Court did not define the term "testimonial," in either <u>Crawford</u> or <u>Davis</u> the examples the Court gave of testimonial hearsay are illustrative: 1) <u>ex parte</u> in-court testimony, affidavits, custodial examinations, and prior testimony; (2) "pretrial statements that declarants would reasonably expect to be used prosecutorially;" (3) "formalized" materials such as depositions and confessions; and (4) "statements that were made under circumstances which would lead an objective witness to reasonably believe that the statement would be available for use at a later trial." <u>Crawford</u>, 541 U.S. at 51-52. The Supreme Court also stated that "prior testimony at a preliminary hearing, before a grand jury, or at a former

1 trial," as well as statements made during a police interrogation
2 are testimonial. Id. at 68.

3     Ramirez's statements do not fall into any of the categories
4 of statements discussed in Crawford or Davis. Ramirez's
5 statements are more analogous to co-conspirator statements,
6 which Court in Crawford expressly stated are non-testimonial.
7 Crawford, 541 U.S. at 56. Ramirez was not speaking to law
8 enforcement nor was she giving a formal statement. Under the
9 circumstances of this case, it is clear that Ramirez had no
10 reason to believe that the statements she was making to a local
11 gun shop employee would be used in a later prosecution. Cf.
12 Saechao v. Oregon, 249 Fed. Appx. 678, 679 (9th Cir. Oct. 2,
13 2007) (unpub.) (affirming admission of statements made by a co-
14 defendant to a friend in a tape-recorded jail call, stating that
15 Crawford "does not apply to 'an off-hand, overheard remark.'")
16 Because Ramirez's statements are non-testimonial, the
17 admissibility of the statements is subject to hearsay law, not
18 Crawford.

19     **2.**  **Ramirez's Statements Were Against Her Penal Interest**

20     If Ramirez's statements are admitted for their truth, i.e.
21 that she had AK-47s in her garage, such statements would be
22 hearsay. The hearsay exception for statements against the
23 declarant's penal interest applies when the declarant is
24 unavailable as a witness and the statement, at the time of its
25 making, "so far tended to subject the declarant to civil or
26 criminal liability. . .that a reasonable person in the
27 declarant's position would not have made the statement unless
28 believing it to be true." Fed. R. Evid. 804(b)(3). In

07CR3239-JM

1  addition, to satisfy the Confrontation Clause the statements

2  must carry "particularized guarantees of trustworthiness."

3  <u>United States v. Boone</u>, 229 F.3d 1231, 1233(9th Cir. 2000).

4          *a.  Ramirez is unavailable*

5      A witness is unavailable if she is exempted from testifying

6  on the ground of privilege.  Fed. R. Evid. 804(a)(1).  In this

7  case, Ramirez invoked both her 5th Amendment and spousal

8  privileges to avoid testimony before the grand jury.  The

9  Government will serve Ramirez with a trial subpoena, but

10 anticipates she will again invoke her rights.  If she invokes,

11 she will be unavailable to testify as a witness regarding her

12 statements.

13         *b.  Ramirez's statements were against penal interest*

14         Whether a statement was sufficiently against the declarant's

15 penal interest for purposes of Rule 804(b)(3) exception requires

16 a finding that "a reasonable person in the declarant's position

17 would not have made the statement unless believing it to be

18 true." To qualify under this exception, the statements must "in

19 a real and tangible way, subject [her] to criminal liability."

20 <u>United States v. Hoyos</u>, 573 F.2d 1111, 1115 (9th Cir.1978).

21 "Moreover, whether a statement is self-inculpatory or not can

22 only be determined by viewing it in context."  <u>Williamson v.</u>

23 <u>United States</u>, 512 U.S. 594, 603 (1994).

24     During his testimony before the grand jury, Captain Davis

25 explained in detail the substance of Ramirez's statements and

26

27

28

the surrounding circumstances.[3/]   To begin, Ramirez voluntarily
disclosed to Captain Davis that she had access to an M-4, a
weapon which is illegal in California.[4/] Specifically, after it
became clear that Ramirez was unable to shoot the .45 handgun,
Davis asked if she had access to another gun.  Ramirez responded
"I have an M-4." Ramirez knew that possessing such a gun exposed
her to liability because she told Captain Davis that San Juan
had taken steps to hide the gun and that when she asked why, he
advised her they would "be in a lot of trouble" if they were
caught with the gun. Captain Davis responded to Ramirez's
admissions by telling her "You can't have these types of guns,
don't ever tell anybody that again."

    After the discussion of the M-4, Captain Davis asked if
Ramirez "had anything else more simple to use," to which she
responded "Well, I have 50 AK's in my garage."   Ramirez then
elaborated that her boyfriend, who she had previously stated was
an active duty Marine, brings them back from his tours in Iraq
by "sneak[ing] them in the medical kit bag, because they don't
check those."   Ramirez further indicated that the weapons were
now wrapped up in their garage.

    In context, it is clear that Ramirez knew that the AK-47s
were illegal based on San Juan's statements to her about how he
had obtained the weapons and the fact that they were hidden.

_____

    [3/]   A copy of Davis's grand jury transcript will be
available at the hearing for the Court's review.

    [4/]   California Penal Code Section 12280(a) penalizes the
importation and the possession of an "assault weapon."    The
Bushmaster M-4 was determined to be an "assault weapon" and this
weapon is currently the subject of a pending case against San
Juan in state court.

1  Moreover, in light of Captain Davis's previous reaction to her

2  admission about possessing an M-4, a reasonable person in

3  Ramirez's position would have understood that knowing possession

4  of Iraqi AK-47s would also expose her to criminal liability.  In

5  addition, the fact that Ramirez invoked her 5th Amendment

6  privilege against self-incrimination to avoid testifying before

7  the grand jury further supports that her statements were against

8  her penal interest.

9         c.   The statements are trustworthy

10        In Boone, an accomplice confided to his girlfriend that he

11  had committed a robbery with the defendant (Boone).  229 F.3d

12  at 1232.   Unbeknownst to the accomplice, the girlfriend was

13  cooperating with law enforcement and had secretly taped their

14  conversation.  Id.  The Ninth Circuit affirmed the district

15  court's admission of the accomplice's statement in Boone's trial

16  as a statement against penal interest.  Id. at 1234.  The Court

17  found that the statements carried the necessary particularized

18  guarantee of trustworthiness because the statements were made in

19  a private setting, the accomplice inculpated himself as well as

20  Boone, and the accomplice was not trying to shift blame.  Id.

21        Similarly, in Padilla v. Terhune, 309 F.3d 614 (9th Cir.

22  2002), an accomplice in a murder told a friend about what had

23  happened.  Id. at 618.  The Court affirmed the admission of the

24  accomplice's statement in a trial against a co-defendant.  Id.

25  at 619.  The Court found that the situation was like Boone

26  because the statement was made in a private setting, the

27  declarant had no reason to think the police were involved, and

28  the declarant did not attempt to mitigate his conduct or shift

1  blame.  Id.  Thus,  the  Court  found  that  the  statement's

2  admission did not violate the Confrontation Clause.  Id. at 620.

3      Like  the  statements  in  Padilla  and  Boone,  Ramirez's

4  statements  carry  a  particularized  guarantee  of  trustworthiness

5  given  the  attendant  circumstances.   Ramirez  was  not  talking  to

6  law  enforcement,  she  made  no  effort  to  mitigate  her  involvement

7  (to  the  contrary,  she  openly  claimed  personal  access  and

8  knowledge  of  the  weapons)  nor  was  she  attempting  to  implicate

9  San  Juan  in  a  crime.   Rather,  Ramirez  was  frightened  about  what

10  she  thought  had  been  an  attempted  break-in  at  her  house  and  she

11  was  seeking  assistance  from  a  gun  shop  employee  on  how  to

12  protect  herself.   The  statements  were  made  in  a  private  setting

13  and  Ramirez's  responses  to  Davis's  questions  were  designed  to

14  further  her  goal  of  learning  to  shoot  a  weapon.   The  statements

15  are  also  trustworthy  because  they  were  corroborated  by  the  fact

16  that  (1)  ATF  found  an  M-4  under  her  bed  and,  as  she  had  stated,

17  the  gun  had  come  from  out-of-state  and  (2)  ATF  found  an  AK-47

18  wrapped  up  in  her  garage  and,  as  she  had  stated,  the  gun  had

19  markings  indicating  it  had  come  from  Iraq.   In  this  context,

20  Ramirez's  statements  satisfy  the  Confrontation  Clause  and  are

21  admissible.

22      **3.   The Government Agrees to Limit the Statements**

23      Although  Ramirez's  statements  about  the  M-4,  the  number  of

24  AK-47s  and  the  fact  that  San  Juan  had  smuggled  the  AK-47s  into

25  the  United  States  from  Iraq  in  medical  kit  bags  are  relevant  and

26  admissible,  the  Government  is  not  seeking  admission  of  Ramirez's

27  full  statement  to  Captain  Davis.   The  Government  seeks  to  admit

28  Captain  Davis's  question  to  Ramirez  regarding  whether  she  has

access to any other guns and agrees to limit and sanitize her response to be that she "has AKs in her garage." This statement is highly relevant given Defendant San Juan's stated defense that he did not know about the AK-47 that was found in the garage he shared with Ramirez. The Government's limiting proposal will eliminate any risk of *unfair* prejudice. Accordingly, the statement should be admitted under Rule 804(b)(3).[5/]

If the Court were to find that the statement is not admissible under Rule 804(b)(3), the Government seeks to elicit Ramirez's statement that she "has AKs in her garage" not for the truth of the matter of asserted, but rather to establish the circumstances leading to the search of her residence and the seizure of the AK-47 charged in this case. Such evidence is admissible under Ninth Circuit precedent. In United States v. Daly, 974 F.2d 1215 (9th Cir. 1992), the defendant sought to exclude the fact that the felon-in-possession charge arose out of an eleven hour shoot-out with police. The Court rejected this argument, holding that the jury "cannot be expected to make its decision in a void." Id. at 1217. See also United States v. Collins, 90 F.3d 1420, 1429 (9th Cir. 1996) (affirming admission of evidence that the defendant was in the building to commit a burglary in a felon-in-possession case).

---

[5/]    Defendant San Juan has indicated his defense is that he allowed other individuals to use his garage and one of those individuals put the gun in the garage without his knowledge. If, however, Defendant San Juan argues that the gun belonged to Ramirez and he was unaware of its existence, the remainder of Ramirez's statement regarding how the AK-47s came to be in her garage should be admitted.

07CR3239-JM

1    Without Ramirez's statement, the Government will be unable
2   to explain why ATF knocked on her door on June 28, 2006 and the
3   resulting hole in the story could mislead the jury.  This is the
4   same issue presented in the above-cited felon-in-possession
5   cases where the Government was allowed to introduce the
6   circumstances surrounding how the defendant came to be found
7   with the charged gun in the first place.  In this case the issue
8   is amplified by the fact that San Juan will be in full uniform
9   throughout the course of the trial – the jury needs to know that
10  San Juan was not being unfairly targeted and that ATF was not
11  simply knocking on random doors.  Accordingly, if Ramirez's
12  statement is not admitted for its truth, the statement should be
13  admitted (with a limiting instruction) to establish why Captain
14  Davis contacted law enforcement and why Agent Schmidt began an
15  investigation.

16  **B.   The Court Should Admit Statements by Defendant San Juan**

17    Defendant San Juan has indicated that his defense to the
18  charge is that he did not know the AK-47 was in the garage and
19  that someone else must have put it there.  In light of this
20  defense, and the fact that the Government must prove that
21  Defendant San Juan knowingly possessed the AK-47, the Government
22  seeks to elicit certain statements made by Defendant San Juan
23  that go to his knowledge of the weapon.  Such statements are not
24  hearsay because the statements were made by a party-opponent.
25  Fed. R. Evid. 801(d)(2).

26

27

28

Specifically, the Government seeks to admit the following statements:[6/]

1) the substance of the voicemail message Defendant San Juan left for Agent Schmidt on June 29, 2008 regarding the weapons taken from his residence during the consent search;

2) the substance of Defendant San Juan's conversation with Agent Tedla on June 29, 2008 regarding the weapons taken from his residence during the consent search;

3) the substance of Defendant San Juan's telephone conversation during the summer of 2006 with Staff Sergeant Robert Wold wherein he admitted that he had brought an AK-47 back from Iraq and that ATF had found it;

4) Defendant San Juan's instructions to Ramirez on February 5, 2007 "don't tell them anything, you don't have to talk to them", when Agents Schmidt and Tedla were attempting to serve the grand jury subpoena on Ramirez.

The first two statements are relevant because San Juan refers to the seized weapons as belonging to him, which goes to his knowledge that the AK-47 was in his garage.  Although these statements were made to law enforcement, Defendant San Juan clearly was not in custody at the time the statements were made nor were the statements made in response to interrogation. Moreover, there is no question but that the statements were voluntary in that the statements were initiated by Defendant San Juan himself.  Accordingly, the statements are admissible.

---

[6/]    The list of specific statements is not intended to be exclusive and the Government reserves the right to admit additional statements if such statements become relevant.

1    The third statement is highly relevant because Defendant San

2    Juan admitted to bringing the AK-47 back from Iraq. Staff

3    Sergeant Wold is not a member of law enforcement, rather he is

4    an active duty Marine who served with Defendant San Juan in

5    Iraq. Defendant San Juan initiated the call and Staff Sergeant

6    Wold will testify at trial and will therefore be subject to

7    cross-examination. Accordingly, Defendant San Juan's statement

8    to Staff Sergeant Wold is admissible.

9    The fourth statement is relevant as consciousness of guilt,

10   particularly in light of the fact that it was Ramirez's

11   statements to Captain Davis that prompted the consent search and

12   the grand jury subpoena in the first place. Again, San Juan's

13   statement was voluntary and he was not in custody nor was he

14   responding to interrogation. Accordingly, San Juan's statement

15   to Ramirez is admissible. To the extent the Court finds that

16   the context of the statement (service of a grand jury subpoena

17   on Ramirez) is somehow unfairly prejudicial given that Ramirez

18   will likely invoke her 5th Amendment and spousal privileges, the

19   statement can be sanitized to remove the reference to the

20   subpoena.

21   **C.   The Court Should Allow Video of the Machinegun**

22   The Government seeks to introduce a video of an ATF agent

23   firing the AK-47 charged in this case. The video will be

24   produced in discovery in advance of the hearing date. The video

25   is relevant for two purposes. First, the Government must prove

26   that the AK-47 is fully automatic. The video is the best

27   evidence of the weapon's fully automatic capability. Second,

28   the Government must prove that Defendant San Juan *knew* that the

AK-47 was fully automatic.  The video is required to show the jury that a person, like San Juan, who has experience with Iraqi AK-47s and has seen them in use, would know that such a weapon is fully automatic.  This is especially important because this AK-47 (which was manufactured in 1969) looks like a regular rifle and does not resemble the type of machineguns the jurors may have seen on television.  Accordingly, the Government should be allowed to show a brief video of the AK-47 being fired.

### D.    The Court Should Preclude Inflammatory Testimony

The Government has spoken with several potential defense witnesses.  Many of these witnesses have made comments to the effect that prosecuting Defendant San Juan will harm the Marines, the United States, and/or the war effort in Iraq.  The Government wants to flag this issue because such testimony has no relevance and would unfairly prejudicial.  Accordingly, such inflammatory testimony is inadmissible.  Fed. R. Evid. 402, 403.

### E.    The Court Should Approve Attorney Conducted *Voir Dire*

The Government will include a list of proposed *voir dire* questions in its trial memorandum, which will be filed in advance of the in limine hearing.  Because this case involves sensitive issues, especially in light of the fact that the defendant will be wearing a Marine uniform, the Government requests that the Court approve both defense and Government *voir dire* questions in advance.  Such advance screening will avoid the jury being tainted by questions that are deemed improper only after they have been asked.

//

//

**IV**

**GOVERNMENT'S RENEWED MOTION FOR RECIPROCAL DISCOVERY**

To date, the Defendant has produced a list of potential witnesses, but he has not produced reciprocal discovery in the form of documents, exhibits or prior statements. The Government requests that the Defendant comply with Rules 12.2 and 16(b) of the Federal Rules of Criminal Procedure, as well as Rule 26.2 which requires the production of prior statements of all witnesses, except for those of the Defendant. The Defendant has not provided the Government with any documents, photographs, or statements. Accordingly, the Government intends to object at trial and ask this Court to suppress any evidence at trial which has not been provided to the Government.

**V**

**CONCLUSION**

For the above stated reasons, the Government respectfully requests that its Motions in Limine and Renewed Motion for Reciprocal Discovery be granted.

DATED: May 23, 2008.

Respectfully submitted,

KAREN P. HEWITT
United States Attorney


S/Nicole Acton Jones
NICOLE ACTON JONES
TARA MCGRATH
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,     )     Case No. 07cr3239-JM
                              )
                Plaintiff,    )
                              )
        v.                    )
                              )     CERTIFICATE OF SERVICE
LEONARDO SAN JUAN, JR.        )
                              )
                Defendant.    )
_____)

IT IS HEREBY CERTIFIED THAT:

    I, Nicole A. Jones, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

    I am not a party to the above-entitled action. I have caused service of Government's Motions in Limine and Renewed Motion for Reciprocal Discovery on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

    1) Joseph H. Low IV

    I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

    none

the last known address, at which place there is delivery service of mail from the United States Postal Service.

    I declare under penalty of perjury that the foregoing is true and correct.

    Executed on May 23, 2008.

                        s/Nicole Acton Jones
                        NICOLE ACTON JONES
                        E-mail: nicole.jones@usdoj.gov